UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| MICHAEL WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | 1:09-CV-139 |
| | ) | |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| MARSHAL MIZE FORD, INC., | ) | |
| | ) | |
| Defendant | ) | |

# **MEMORANDUM**

Before the Court is a motion for summary judgment filed by Marshal Mize Ford, Inc., ("Defendant") (Court File No. 20), to which Plaintiff Michael Wright ("Plaintiff") responded (Court File No. 26) and Defendant replied (Court File No. 29). Plaintiff moved to file a supplemental brief (Court File No. 32) and Defendant responded (Court File No. 33). United States Magistrate Judge William B. Carter filed a Report & Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), recommending Plaintiff's motion to amend/revise the complaint be denied (Court File No. 34). Plaintiff filed an objection to the R&R (Court File No. 36) and Defendant responded (Court File No. 41).

The Court will **GRANT** Plaintiff's motion to amend as it finds the complaint includes a claim for retaliation and an amendment is appropriate. After carefully considering the parties' respective filings (Court File Nos. 20, 21, 26, 27, 29, 32, 33), the Court concludes summary judgment is appropriate and a supplemental brief is unnecessary. Accordingly, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 20) and will **DENY** Plaintiff's motion to file a supplemental brief (Court File No. 32).

## I.   MOTION TO AMEND/REVISE COMPLAINT

Plaintiff's complaint asserts unlawful termination in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"). A described in the complaint, "Shortly after notifying Defendant of his need for FMLA leave, the Defendant terminated Plaintiff's employment for the purposes of preventing the use of FMLA leave" and "Defendant interfered with the exercise of Plaintiff's rights under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*" (Court File No. 1-1, ¶¶ 10, 14). Defendant's memorandum in support of summary judgment contains a footnote citing the complaint's lack of a retaliation claim, however, Defendant proceeds to discuss the appropriateness of summary judgment "in the event this Court interprets the Complaint to make such an allegation" (Court File No. 21, p. 16 n. 7). Plaintiff seeks to amend the complaint to clarify his assertion of both interference and retaliation theories of FMLA claims.

The magistrate judge determined it was too late to allow the proposed amendment and denied Plaintiff's request (Court File No. 34). "If the complaint does state a claim for retaliation, as contended by the plaintiff, then there is no need to amend the complaint" (*id.* at 2). Plaintiff objects, citing *Wysong v. Dow Chem. Co.*, 503 F.3d 441 (6th Cir. 2007), and claiming Defendant was on notice of a retaliation theory and would not be prejudiced by an amendment. In *Wysong*, the district court had rejected an interference claim under FMLA because the complaint specified a retaliation claim but not one for interference. Finding the district court's rejection "overly rigid," the Sixth Circuit concluded "notice pleading does not box plaintiffs into one theory or the other at the complaint stage of an FMLA action." *Wysong*, 503 F.3d at 446. Similarly, the Court construes the alleged violations in the instant complaint as broad enough to encompass both the retaliation and interference theories. Defendant has already moved for summary judgment on both theories and

in its response to Plaintiff's objections (Court File No. 41), concedes under *Wysong*, an amendment of the complaint is appropriate.

Accordingly, the Court will **REJECT** the magistrate judge's recommendation (Court File No. 34) and will **GRANT** Plaintiff's motion to amend the complaint (Court File No. 24).

## II.    MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF

Plaintiff seeks leave to file a supplemental brief for purposes of addressing Defendant's contention Plaintiff's affidavit (Court File No. 27) is a "sham affidavit." Defendant submitted a response in opposition (Court File No. 33). The Court does not rely on parties' characterization of testimony when it has excerpts of transcripts in the record. Therefore, there is no need to correct paraphrasing of Plaintiff's testimony. In addition, any further discussion of Plaintiff's infertility or how Defendant was first apprised of it is not relevant to the issue of determining whether he had a disability at the time of termination (*see* Section **II. C. 1**).

The Court finds supplemental briefing on Plaintiff's testimony relating to his infertility is unnecessary and will **DENY** Plaintiff's motion (Court File No. 32).

## III.    MOTION FOR SUMMARY JUDGMENT

### A.    Relevant Facts

Plaintiff worked as a second mechanic in Defendant's Buy Here Pay Here ("BHPH") department at its Ford dealership in Hixson, Tennessee from August 6, 2007 until June 20, 2008

(Court File Nos. 26-2 p. 9; 20-2 ("Plaintiff Dep.") p. 7).[1] Although he originally reported to multiple managers, he was reporting to Layne Mason ("Mason") and David Large ("Large") at the time his employment ended (Plaintiff Dep. pp. 7-8). The BHPH manager, Large, finds used cars to sell in the BHPH program and Plaintiff and other mechanics worked on these vehicles to prepare them for sale (Court File No. 26-3 ("Large Dep.") pp. 11-13).[2] The BHPH department specialized in selling vehicles, sometimes older ones, to people who are unable to qualify for traditional sources of credit. Customers would make payments on the vehicles at Defendant's Hixson location and if the vehicle developed problems after purchase, the BHPH department attempted to fix them.

Plaintiff was bitten by a tick sometime around March or April 2008 and went to see his family doctor who noted abnormal lab results and referred him to Dr. Dean Lentz ("Lentz"), a specialist. Plaintiff was formally diagnosed with prostate cancer on June 6, 2008 (Plaintiff Dep. pp. 37-38). Lentz went over various treatment options and referred Plaintiff to Dr. Stephen Golder to discuss the "pros and cons" of other options. Plaintiff was "90" or "95" percent certain he would have surgery, but met with Golder on June 23, 2008, to review the seed implant procedure and other options (*id.* p. 45). Ultimately, after meeting with Golder, he decided to have surgery and discussed his decision with Lenz on July 3, 2008 (Court File No. 20-2, p. 11; Plaintiff Dep. p. 47). Plaintiff eventually had surgery in September 2008 and it was successful (Plaintiff Dep. p. 86). Prior to the surgery, Plaintiff did not have any physical restrictions or limitations from his prostate cancer (*id.*

---

[1]Excerpts of Plaintiff's deposition were filed as exhibits to Defendant's motion (Court File No. 20-2) and Plaintiff's response (Court File No. 26-1). For purposes of clarity, citations to Plaintiff's deposition refer to the actual pages of the deposition transcript and not the various portions attached to filings in the docket.

[2] Similarly, excerpts from Large's deposition were attached as exhibits (Court File Nos. 20-3, 26-3), however, citations refer to the transcript itself.

4

pp. 8-9, 26).

When Plaintiff first learned of his diagnosis, he spoke with various employees about it, including Mason and Large. When he returned from his June 6 appointment, he told Mason he "was most likely going to have surgery done" (Plaintiff Dep. p. 50). Later that afternoon, Plaintiff told Large "most likely in August when my vacation time come up, that I was going to have to take six to eight weeks and have prostate cancer surgery" (*id.* p. 52).[3] Large commented it "was a rough time of year" for Plaintiff to take off because it was so busy (*id.* p. 53). Large also asked "how did it go from a tick bite to [] having prostate cancer?" (*id.* p. 52). This same day Plaintiff also ran into Lewis Dyer, Defendant's president, and informed him of his diagnosis.[4]

Sometime around June 2008, Plaintiff worked on a Mitsubishi Eclipse to prepare it for sale (Large Dep. pp. 49-51; Plaintiff Dep. p. 59). The vehicle was sold to Bambi McKeel ("McKeel") and within the 30-day warranty period, McKeel brought the car in because the brake lights were not working. Large told Plaintiff to work on the lights and Plaintiff determined a switch was required to be ordered to correct the problem (Plaintiff Dep. pp. 59-60). Plaintiff told Large he would order the necessary switch and it should arrive in a few days (*id.* p. 70). When McKeel returned on June 20, 2008, she was upset because she received a warning ticket for her brake lights (Large Dep. p. 64). Plaintiff learned the part had not arrived and told Large "I cannot fix the brake lights on that thing today without the switch" (Plaintiff Dep. p. 71). Large inquired of the parts department and also had Mason check and they both discovered the part had not been ordered for the vehicle prior

---

[3] The precise wording of Plaintiff's indication he needed surgery is unclear. Plaintiff later says he told Large "if I had the surgery, I would be off six to eight weeks and I was going to try and do it at vacation time in August"(Plaintiff Dep. p. 56).

[4] Lewis Dyer denies this conversation ever occurred and denies any knowledge of Plaintiff's cancer (Court File No. 26-2, p. 8).

5

to June 20 (Large Dep. pp. 83-84; Mason Dep. pp. 33-36). Mason was ultimately able to repair the vehicle in approximately fifteen minutes and concluded no additional parts were necessary (Large Dep. p. 67). Although the parties initially disputed details of Plaintiff's "termination," for purposes of summary judgment, Defendant does not dispute Plaintiff's version of how the final meeting transpired (Court File No. 21, p. 4 n.1; Court File No. 29, pp. 6-7). After discovering the part had not been ordered, Large asked Mason and Plaintiff to come with him to the office for a discussion. Large became "unglued" and stated "if you can't fix that car and fix the brake lights, just pack your locker" (Plaintiff Dep. p. 71). Plaintiff replied "I haven't got a switch. I can't fix it. So I guess I'm fired, aren't I?" (*id.* p. 72). Large did not respond and Plaintiff walked out of the office and turned his keys into Large's secretary, informing her that Large "just fired me" (*id.* pp. 72-73).

Large and Mason had previously noted problems with Plaintiff's performance prior to the events of June 20, 2008, including a time where Plaintiff acted disoriented and smelled of alcohol, Plaintiff's disappearing for significant periods of time during his shifts, and taking days off without making them up on the weekends as promised (Large Dep. pp. 41-42; Mason Dep. pp. 51-52). Following the meeting, Large prepared an "Employee Change of Status" form describing Plaintiff's "Discharge" as due to failing to "follow up on jobs," not telling the truth about jobs, and "MGR was counseling EMP when he said 'I can't do it.' He got up and I told him to clean out his tools. EMP turned in keys and left" (Court File No. 26-3, p. 29).

Plaintiff believes he was wrongfully terminated because of his prostate cancer and the fact he "was going to have to take time off and be out of work for a while and it would put [Defendant] in a hardship" (Plaintiff Dep. p. 79). Defendant claims to the extent Plaintiff was even "terminated"

6

it was due to his dishonesty regarding ordering parts and for his failure to properly perform his job duties.

**B.     Standard of Review**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**C.     Analysis**

Plaintiff claims he was terminated in violation of the Americans with Disabilities Act, the Tennessee Disability Act, and the Family and Medical Leave Act. Defendant has moved for

summary judgment on all claims.

1. **<u>Americans with Disabilities Act</u>**

The Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), prohibits employers from discriminating against a qualified individual "on the basis of disability." 42 U.S.C. §12112 (a). Absent direct evidence of discrimination, Plaintiff must establish a prima facie case demonstrating: "(1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accomodation; (3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008). Once Plaintiff has established a prima facie case of disability discrimination, the burden shifts to Defendant to offer a "legitimate reason for its action that is unrelated to the employee's disability." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186-87 (6th Cir. 1996) (citing *McDonnell Douglas Corp. v Green*, 411 U.S. 792, 802, (1973)). Despite the shifting burdens of production, Plaintiff ultimately bears the "burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Macy v. Hopkins Cnty. School Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007). An employee alleging disability discrimination must prove he suffered adverse employment action solely because of his disability. *Jones v. Potter*, 488 F.3d 397, 409 (6th Cir. 2007).

A person is disabled under the ADA if he has "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2006).[5]

---

[5]Despite amendment to subsection (c) in the "ADA Amendments Act of 2008," which broadens impairments encompassed in the "regarded as" prong, this amendment is not retroactive

Under the first prong, Plaintiff cannot rely solely on the diagnosis of prostate cancer to prove disability, but must establish this impairment substantially limited a major life activity. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002). Prior to the 2008 Amendment, a plaintiff may establish the third prong by showing : "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). The undisputed facts show Plaintiff was not disabled at the time his employment with Defendant was terminated.

Plaintiff was first diagnosed with prostate cancer June 6, 2008, and Dr. Lenz discussed different types of treatment. Plaintiff, although he was 90-95% certain he would opt for the surgery, did not elect to have prostate surgery until July 3, 2008. Although Plaintiff has suffered infertility as a consequence of this surgery, he was not otherwise impaired as a result of the cancer prior to the surgery. Plaintiff argues because prostate cancer surgery substantially limits the ability to reproduce, a prostate cancer victim has a disability under ADA. Plaintiff's reliance on *Bragdon v. Abbott*, 524 U.S. 624 (1998) is misplaced. Although *Bragdon* supports a finding reproduction is a major life activity, Plaintiff is not claiming his prostate cancer interfered with reproduction rather, the side effects from *surgery* interfered with reproduction. It is undisputed any limitation on Plaintiff's ability to reproduce occurred after his employment with Defendant ended. Under the first method of proving disability, Plaintiff must be able to establish a substantial limitation on a major life activity at the time of the adverse employment action to prevail on an ADA claim. *See Ferrette v.*

---

and does not apply to pre-amendment conduct such as here. *Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562 (6th Cir. 2009).

*Cuyahoga Cnty. Bd. of Elections*, 105 F. App'x 722, 727 (6th Cir. 2004). Plaintiff's own testimony indicates he was able to perform his duties "mentally and physically" at all times while working for Defendant, he worked without any restrictions, and there was never a time he could not do his job prior to the surgery (Plaintiff Dep. pp. 9, 26). Plaintiff therefore cannot establish he was disabled under the first prong.

Plaintiff originally claimed he qualified as disabled under the third prong because Defendant regarded him as a person with a disability because of his need to miss work for surgery due to prostate cancer (Court File No. 1-1, ¶ 11). In Plaintiff's response to summary judgment, he appears to withdraw this claim in light of the *Milholland* decision (Court File No. 26, p. 16) ("Were the 2008 ADA amendment applicable, Plaintiff would have a clear case of 'regarded as' disability discrimination."). However, even if this claim were to proceed, Plaintiff has not demonstrated he was regarded as having a physical impairment substantially limiting a major life activity. To establish Defendant regarded Plaintiff as limited in the major life activity of working, Plaintiff would have to show Defendant regarded his impairment as substantially limiting "working in the same broad class of jobs." *Milholland*, 569 F.3d at 566 (citing *Sutton*, 527 U.S. at 491). Defendant knew Plaintiff had prostate cancer and was considering surgery in the future, which would require him to take a few weeks off of work, but this does not result in a finding Plaintiff was regarded as substantially limited during his employment with Defendant. *Id.* at 568 (finding "[t]hat the defendants were aware of [the plaintiff]'s health issues does not support a conclusion that they misperceived [the plaintiff]'s physical abilities as impaired"); *see also Toyota Motor Mfg.*, 534 U.S. at 198 ("the impairment's impact must also be permanent or long term"). Because Plaintiff continued in his duties without limitation and there is no indication Defendant regarded Plaintiff's cancer as substantially limiting a major life activity, Plaintiff cannot establish disability under the

third prong.

The undisputed facts could not support a jury verdict in Plaintiff's favor on the ADA claim because Plaintiff cannot establish he was disabled at the time of his termination. Accordingly, the Court will grant Defendant's motion for summary judgment on Plaintiff's ADA claim.

### 2. Tennessee Disability Act

Plaintiff's claims under the Tennessee Disability Act, Tenn Code Ann. §§ 8-50-103 *et seq.* ("TDA") are evaluated using cases interpreting the ADA for guidance. *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000). As in the ADA, Plaintiff must demonstrate he suffered from a physical or mental impairment that limited a major life activity or that he was regarded as having such an impairment to prevail on his TDA claim. *Chandler v. Specialty Tires of Am.*, 134 F. App'x 921, 925 (6th Cir. 2005); Tenn Code Ann. § 4-21-102(3)(A). For the reasons discussed in the previous section, Plaintiff also cannot establish a disability under the TDA.

The Court therefore finds summary judgment is appropriate on Plaintiff's TDA claim.

### 3. Family and Medical Leave Act

The Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA") provides eligible employees with up to 12 weeks of leave per 12-month period when the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The Court of Appeals for the Sixth Circuit acknowledges two theories of recovery under the FMLA. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507-08 (6th Cir. 2006). The "entitlement" or "interference" theory recognizes employers may not "interfere with, restrain, or deny the exercise or attempt to exercise any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). The "retaliation" or "discrimination" theory arises from the provision making it "unlawful for any employer to discharge or in any other manner discriminate

against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Plaintiff claims Defendant violated the FMLA by interfering with his rights and retaliating against Plaintiff when he asserted his FMLA rights by indicating his potential need to obtain surgery. Defendant moves for summary judgment on both claims, arguing Plaintiff has failed to establish a prima facie case of interference or retaliation.

To prevail on an interference claim, a plaintiff must show Defendant interfered with a FMLA right to medical leave or to reinstatement following FMLA leave. *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). Plaintiff must therefore establish: "(1) [he] was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) [he] was entitled to leave under the FMLA, (4) [he] gave the employer notice of [his] intention to take leave, and (5) the employer denied the employee FMLA benefits to which [he] was entitled." *Edgar*, 443 F.3d at 507. Under the retaliation theory, Plaintiff needs to show he: (1) engaged in a statutorily protected activity, (2) he was adversely affected by an employment decision, and FMLA, (2) he suffered an adverse employment action, and (3) there was a causal connection between the exercise of his rights under the FMLA and the adverse employment action. *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

In this jurisdiction, a Plaintiff may recover under either theory only if he is an "eligible employee." *See Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 629-31 (6th Cir. 2008) (finding Plaintiff's FMLA claims fail as a matter of law where employer established the plaintiff worked less than the requisite 1,250 hours preceding her request for FMLA leave); *see also Davis v. Mich. Bell Tel. Co.*, 543 F.3d 345, 354 (6th Cir. 2008) ("To the extent that [the plaintiff] is claiming that she was terminated because of her attempt to obtain FMLA leave in January of 2005, her claim must fail as a matter of law because she was not eligible for FMLA benefits"); *Stimpson v. United Parcel*

*Serv.*, 351 F. App'x 42, 45 (6th Cir. 2009) ("The FMLA thus makes clear that only 'eligible employees' may recover under the statute."); *Hummeny v. Genex Corp., Inc.*, 390 F.3d 901, 905-06 (6th Cir. 2004) ("in an FMLA retaliation case. . . if the plaintiff does not qualify as an 'eligible employee,' the plaintiff does not state a claim for relief under the FMLA."); *Massengill v. Anderson Cnty. Bd. of Educ.*, 478 F.Supp.2d 1004, 1006-08 (E.D. Tenn. 2007); *Webb v. U.P.S., Inc.*, No. 3:06-cv-174, 2007 WL 2903916 at *5 (E.D. Tenn. Oct. 2, 2007). To qualify as an "eligible employee," Plaintiff must have been employed "for at least 12 months" by Defendant and "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2). Plaintiff undisputedly worked for Defendant for less than the requisite 12 months, therefore he was not an eligible employee and his FMLA claims fail as a matter of law.

Plaintiff cites *Skrjanc* in support of his retaliation claim, arguing "the right to actually take twelve weeks of leave pursuant to the FMLA includes the right to declare an intention to take such leave in the future." 272 F.3d at 314. The regulations under FMLA do require notice to an employer before scheduling medical treatments, *see* 29 C.F.R. § 825.302(e), which apprises an employer of the "anticipated timing and duration of the leave." Although the court in *Skrjanc* determined an eligible employee's request for FMLA leave was considered protected conduct for purposes of establishing a prima facie retaliation claim, the plaintiff was already established as an eligible employee. As discussed above, Plaintiff was not an eligible employee at the time of his termination. Furthermore, unlike *Skrjanc*, Plaintiff's "notice" of intent to take leave has not been established. Plaintiff stated he "most likely" would "have to take six to eight weeks" for cancer surgery, *see* Plaintiff Dep. p. 52, but he did not made the final decision to have surgery until after his employment had ended (*see* Plaintiff Dep. p. 32 (referring to the appointment on June 1, "it was pretty much in our mind of 90 percent that I would have the surgery"), p. 46 (affirming he had

doubts, but his visit to Golder [on June 23] confirmed in Plaintiff's mind he would have the surgery) p. 47 (referring to the July 3 appointment, Plaintiff indicated to Dr. Lenz he decided to go ahead with the radical surgery)). Thus, even if the Court were to depart from established precedent limiting FMLA recovery to "eligible employees," the facts do not support a finding Plaintiff gave sufficient notice of his intent to take leave when his decision to undergo surgery occurred after his employment ended.

As stated above, the Court will grant Defendant's motion for summary judgment as to Plaintiff's FMLA interference and retaliation claims.

## IV. CONCLUSION

For the reasons stated, the Court will **REJECT** the magistrate judge's report and recommendation (Court File No. 34) and **GRANT** Plaintiff's motion to amend (Court File No. 24). The Court finds supplemental briefing unnecessary and will **DENY** Plaintiff's motion to supplement (Court File No. 32) and will **GRANT** Defendant's motion for summary judgment (Court File No. 20).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**